ANN MARGARET EASTWOOD                                                    PLAINTIFF

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security              DEFENDANT

<u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the Court on Plaintiff's complaint seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner denying her claim for Supplemental Security Income (SSI) benefits.  The fact and law summaries of Plaintiff and Defendant are at Dockets # 15 and 16. The parties have consented to the jurisdiction of the undersigned Magistrate Judge to determine this case, with any appeal lying before the Sixth Circuit Court of Appeals.  (Docket # 13.)

The Administrative Law Judge's ("ALJ's") finding that Plaintiff suffers from no severe, or vocationally significant, manipulative limitation is not supported by substantial evidence.  The ALJ's findings regarding Plaintiff's borderline intellectual functioning, knee impairment, and diabetic neuropathy are insufficient to facilitate effective and meaningful review.  Therefore, the Court will REMAND this matter to the Commissioner for a new decision.

## Background facts and procedural history

Plaintiff was born in 1970 and has no past relevant work.  (Administrative Record ("AR") at 37.) The ALJ found that Plaintiff suffers from severe, or vocationally significant, borderline intellectual functioning (AR at 23), which requires, among other things, that work instructions be given to Plaintiff orally or through physical demonstration (as opposed to being given in writing):

> [Plaintiff] can perform simple, routine, repetitive work tasks, meaning tasks, which apply commonsense understanding to carry out instructions furnished orally, or through demonstration, with the ability to deal with problems involving several concrete variables in or from standardized situations. … The claimant should not work in a fast-paced or production-

based work environment, but she can do entry level or goal-oriented work.

(AR at 26.)

In light of Plaintiff's mental limitations, the vocational expert ("VE") indicated that Plaintiff would likely be unable to perform a significant number of jobs in the national economy if she "could only occasionally use the hands for fine manipulative tasks such as fingering and handling." (AR at 82.)

Plaintiff testified that she has had carpal tunnel surgeries on both wrists, which helped, but she continues to experience wrist pain and is sometimes unable to use her hands and manipulate objects for more than 30 minutes at a time:

> *ALJ:* And what kind of problems were you having that caused that surgery?
>
> *Plaintiff:* Carpal tunnel in both of them. They were – they get numb and tingly and they, like, spasm. They – I don't know. They get real stiff on their own. It's hard to – I don't really know how to describe how they do. But after the surgery, it did help some. I still occasionally get the numbness and the tingliness [sic] and they do ache. If – like, I'm trying to make Christmas presents and I can only work on them for, you know, maybe 30 minutes and then I have to stop because my hands hurt so bad.

(AR at 56.)

The ALJ's written decision acknowledged that Plaintiff's "history is significant for carpal tunnel syndrome with release on the left in May 2013 and on the right in October 2013." (AR at 24, 35.) However, the ALJ found that Plaintiff suffers from no severe, or vocationally significant, manipulative limitations. (AR at 26.) In fact, the ALJ was "not persuaded to find **any** *(emphasis added)* manipulative limitations." (AR at 35.)

The ALJ concluded that Plaintiff is not disabled because she retains the ability to perform a significant number of jobs in the national economy such as bottling line inspector, garment bagger, and folder.[1] (AR at 26.)

---

[1] In a recent decision, Magistrate Judge Brennenstuhl noted that the Dictionary of Occupational Tiles (DOT) "indicates the bottling line attendant (DOT # 920.687-042) occupational definition has not been updated since 1977" and that "the laundry folder (DOT 369.687-018) occupational description has not been updated since 1978." *Wright v. Comm'r of Soc. Sec.*, No. 4:18-CV-00021-HBB, 2019 WL 498855, at *8-9 (Feb. 8, 2019 W.D. Ky.).

**The ALJ's finding of no severe, or vocationally significant, manipulative limitation
is not supported by substantial evidence.**

"Severe" is a term of art in Social Security disability law that means approximately "vocationally significant." *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 774 (6th Cir. 2008). The Sixth Circuit construes the severity requirement as a "de minimis hurdle" intended only to "screen out totally groundless claims." *Id.* (quoting *Higgs v. Sec'y of Health & Human Servs.*, 880 F.2d 860, 862 (6th Cir. 1988) and *Farris v. Sec'y*, 773 F.2d 85, 89 (6th Cir. 1985)). Thus, if an impairment has more than a minimal effect on the claimant's ability to do basic work activities (regardless of age, education, and prior work experience), the ALJ must treat the impairment as "severe" and proceed to evaluate the limiting effects of the impairment on the claimant's ability to perform past relevant work and other jobs in the national economy. *Id.* "Basic work activities" are defined as "the abilities and aptitudes necessary to do most jobs" and include "physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or **handling** *(emphasis added)*." *Id.*

The ALJ's finding of that Plaintiff has no severe (and, in fact, does not have "any") (AR at 35) manipulative limitation is not supported by substantial evidence for three reasons. First, the ALJ's decision provides no reason for discrediting Plaintiff's testimony that, notwithstanding carpal tunnel surgeries on both wrists, she continues to experience wrist pain and is sometimes unable to use her hands and manipulate objects for more than 30 minutes at a time. (AR at 56.) In fact, the decision does not even acknowledge the testimony.

An ALJ may consider a claimant's credibility in evaluating claims of limitation due to pain and other subjective symptoms, and reviewing courts give great deference to the ALJ's credibility findings. *Tweedle v. Comm'r*, 731 F. App'x 506, 507 (6th Cir. 2018) (citing *Walters v. Comm'r*, 127 F.3d 525, 531 (6th Cir. 1997)). However, the ALJ's credibility findings must still be supported by substantial evidence. *Id.* The ALJ's decision cited no evidence (substantial or otherwise) for discrediting Plaintiff's testimony of ongoing wrist pain and issues using her hands and manipulating objects.

3

The error of not evaluating Plaintiff's testimony is compounded in this case by a procedural irregularity. "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness' demeanor and credibility." *Amir v. Comm'r*, 705 F. App'x 443, 449 (6th Cir. 2017) (quoting *Walters*, 127 F.3d at 531). In this case, however, the ALJ's decision is signed by an ALJ other than the one who presided over the administrative hearing. (AR at 38.) The decision is signed by the ALJ "for" the presiding ALJ. (*Id.*) It is unclear which ALJ authored the decision and whether the "undersigned" actually observed Plaintiff's demeanor and credibility.[2]

Second, the evidence cited by the ALJ in support of a finding of no manipulative limitation was not substantial. In 2016, after her 2013 wrist surgeries, Plaintiff sought medical treatment from Puneet Bhatia, M.D., due to ongoing wrist pain and manipulative limitation. According to the ALJ:

> There is no evidence of treatment for carpal tunnel related symptoms from February 2014 until October 2016. Tinel's was negative with intact motor strength. X-rays of the wrists were normal and a recent nerve conduction EMG showed only mild cubital tunnel syndrome and mild carpal tunnel. She was given Depo Medrol injections in both thumbs in May and July. Given her positive surgical results and minimal medical treatment thereafter, the undersigned finds carpal tunnel syndrome is a non-severe impairment. The claimant's daily activities including cross-stitch, playing cards, and doing word puzzles indicates good upper extremity dexterity.

(AR at 24.)

"Normal" X-rays of the wrists and EMG results showing "mild" cubital tunnel syndrome and carpal tunnel do not adequately support a finding of no severe, or vocationally significant, manipulative limitation -- much less a finding that Plaintiff can sustain the substantial manipulation required to work as a bottling line inspector, garment bagger, and folder. The fact that Plaintiff performs some daily activities with her hands also does not show that she has no severe manipulation limitation.

---

[2] The fact that one ALJ signed for another ALJ alone probably does not constitute a basis for remand. *See e.g. Beason v. Comm'r*, No. 1:13-CV-192, 2014 WL 4063380, at *10 (E.D. Tenn. Aug. 15, 2014) ("Although the lack of explanation for the signature is less than ideal, it is not reversible error [where] Plaintiff was not prejudiced by ALJ Snyder's signature on behalf of ALJ Soto.").

Plaintiff did not receive "minimal medical treatment" (AR at 24) after her wrist surgeries in 2013. Dr. Bhatia saw her four times between October 2016 and July 2017 for wrist complaints (prior to the administrative hearing in November 2017). (AR at 1006, 1008, 1010, 1013.)

While the ALJ correctly noted that in October 2016 Dr. Bhatia found that Plaintiff's "Tinel's was negative" (AR at 24 referencing AR at 1014), Dr. Bhatia actually found that Plaintiff's "Tinel sign [was] negative [but her] Phalen test [was] positive." (AR at 1014.) The Phalen's test and Tinel's test are methods of diagnosing active carpal tunnel syndrome. *Andreas v. Comm'r*, No. 3:16-CV-02308, 2018 WL 3640420 at n. 5 (M.D. Penn. July 3, 2018). In a Phalen's test, the backs of hands are placed together with wrists sharply flexed or extended for one minute. *Id.* The test is considered positive if tingling or numbness in the fingers is present. *Id.* In a Tinel's test, the medial nerve is tapped at the center of the wrist with the palm facing upward, and the test is considered positive if tingling or pain is present. *Id.* A Phalen's test is more sensitive than a Tinel's test. https://en.wikipedia.org/wiki/Phalen_maneuver. Plaintiff's Phalen's test was also positive on three subsequent occasions. (AR at 1006, 1008, 1011.)

An ALJ's finding of a non-severe impairment is not supported by substantial evidence if the ALJ was "selective in parsing the various medical reports" such that it appears that the ALJ considered only those portions that indicated normal findings. *Germany-Johnson v. Comm'r*, 313 F. App'x 771, 777 (6th Cir. 2008). In ignoring Plaintiff's positive Phalen's test on four occasions, the ALJ appears to have cherry picked Dr. Bhatia's reports for normal findings.

Third, the ALJ's finding of no severe manipulative limitation is at odds with the findings of Plaintiff's primary care physician, Wayne Williams. In October 2017, Dr. Williams completed a physical assessment form, finding, among other things, that Plaintiff is limited in both her "right hand/arm" and her "left hand/arm" to occasional "fingering (i.e. picking, pinching, or otherwise working primarily with the fingers)" due to impairment of her "wrists." (AR at 1049.) As noted above, the VE indicated that Plaintiff would likely be unable to perform a significant number of jobs in the national economy if she

"could only occasionally use the hands for fine manipulative tasks such as fingering and handling." (AR at 82.) Although the ALJ's decision mentioned Dr. William's finding of ability to only occasionally finger (AR at 31), it did not explain why it was being discounted. *See* 20 C.F.R. § 416.927(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.").[3]

### The ALJ's findings regarding Plaintiff's borderline intellectual impairment are insufficient to facilitate effective and meaningful review.

An ALJ's decision "must include a discussion of 'findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record.'" *Reynolds v. Comm'r*, 424 F. App'x 411, 414 (6th Cir. 2011) (quoting 5 U.S.C. § 557(c)(3)(A)). The ALJ's discussion and reasons must be sufficient to "facilitate effective and meaningful judicial review." *Id.* This principle applies to both the ALJ's findings with respect to the Listing and to the claimant's residual functional capacity (RFC). *See id.* at 416 ("In short, the ALJ needed to actually evaluate the evidence, compare it to Section 1.00 of the Listing, and give an explained conclusion, in order to facilitate meaningful judicial review."); *Allen v. Comm'r*, No. 5:11CV1095, 2012 WL 1142480, at *8 (N.D. Ohio Apr. 4, 2012) ("Allen's argument that the ALJ failed to properly articulate the RFC calculation is well-taken. The Court is unable to trace the path of the ALJ's reasoning.").

Plaintiff argues that her borderline intellectual functioning satisfies the clinical criteria of Listing § 12.05B. (Docket # 15 at 11.) In November 2014, Plaintiff's Office of Vocational Rehabilitation (OVR)

---

[3] In his physical assessment form, Dr. Williams made several other findings that, if accepted, would result in an ultimate finding of disability. (AR at 1049.) For example, Dr. Williams opined that, in an 8-hour workday, Plaintiff cannot complete a 40-hour week on a sustained basis; she can sit / stand / walk for a total of 3 hours per 8-hour workday; she frequently needs to rest, recline or lie down to alleviate pain, fatigue, or other symptoms; she can lift/carry no weight; and her impairments would likely result in routine absence from work 4 or more days per month. (*Id.*) Plaintiff does not argue and it does not appear that the ALJ was required to give controlling weight to Dr. Williams' disabling findings because they were not "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [they were] inconsistent with the other substantial evidence in your case record." 20 C.F.R. § 416.927(c)(2). Additionally, the form completed by Dr. Williams was a "check-off form of functional limitation that did not cite clinical test results, observations, or other objective findings." *Ellars v. Comm'r*, 647 Fed App'x 563, 566 (6th Cir. 2016). ALJs "may properly give little weight" to such forms. *Id.*

counselor referred her to licensed psychologist Mardis Dunham, Ph.D., "to clarify her psychoeducational functioning levels." (AR at 659.) Dr. Dunham found that Plaintiff has a full-scale IQ of 74 and a verbal IQ of 68. (AR at 664.) In October 2015, licensed clinical psychologist Lisa M. King, Psy.D., provided a mental status evaluation. Dr. King diagnosed a need to "rule out mild to borderline intellectual deficits" and found that Plaintiff's is "markedly" limited in 2 of 3 functional areas. (AR at 880.) Specifically, Plaintiff is "markedly" limited in her abilities to: 1) "sustain attention and concentration towards performance of simple repetitive tasks; and 2) "tolerate stress and pressure of day-to-day employment." (*Id.*)

Listing 12.05B provides for a conclusive presumption of disability if the claimant satisfies three requirements: (1) significantly subaverage general intellectual functioning evidenced by either a full scale IQ score of 70 or below or a full scale IQ score of 71-75 accompanied by a verbal or performance IQ score of 70 or below; (2) significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, areas of mental functioning (including (a) understand, remember, and apply information; (b) interact with others; (c) concentrate, persist, or maintain pace; and (d) adapt or manage oneself); and (3) evidence about current intellectual and adaptive functioning and the history of the disorder demonstrates or supports the conclusion it began prior to age 22. 20 C.F.R. Part 404, Subpart P, Appendix 1, Section 12.05B (2017).

The ALJ apparently accepted that Plaintiff's full-scale IQ of 74 and verbal IQ of 68 (AR at 664) satisfies Listing § 12.05B(1), noting that Plaintiff's "full-scale IQ score of 74 [is] consistent with low/borderline intellectual functioning" and her "verbal expression and verbal reasoning abilities fell in the extremely low range." (AR at 28.) However, the ALJ found that Listing § 12.05B(2) is not satisfied because "the record does not establish deficits in adaptive functioning." (AR at 26.) The ALJ apparently accepted that Plaintiff's borderline intellectual functioning satisfies Listing § 12.05B(3).

As noted above, Dr. King found that Plaintiff is "markedly" limited in 2 of 4 functional areas. It appears that, if accepted, these findings would satisfy Listing § 12.05B(2). The ALJ gave little weight to Dr.

King's findings, in part, because: "While Dr. King's opinions may reflect a one-time snapshot of the claimant's functioning, the record does not support this level of functioning for 12 continuous months." (AR at 36.) To the extent Dr. King's findings were based on suspected borderline intellectual functioning, they did not reflect merely a "snapshot" view. In any event, the decision (in the first instance) of whether the Listing is satisfied is "reserved to the Commissioner." 20 C.F.R. § 416.927(d)(2). The ALJ's findings regarding Plaintiff's borderline intellectual functioning are insufficient to facilitate effective and meaningful review of Plaintiff's Listing argument.

### The ALJ's findings regarding Plaintiff's knee impairment and diabetic neuropathy are insufficient to facilitate effective and meaningful review.

At the hearing, the ALJ asked Plaintiff about her knees, and she testified that she experiences pain and limitation, particularly in her right knee. (AR at 54.) "I have a bone in there [in the right knee] that didn't fully attach." (*Id.*) In October 2016, Dr. Bhatia noted that a right-knee x-ray showed "evidence of a nondisplaced bipartite patella versus nonunion on the lateral as this was present on in the right patella compared to the left." (AR at 1013.) The ALJ asked whether the knee pain is constant or comes and goes, and Plaintiff responded that "it comes and goes, but when it comes, it comes hard and it can last up to a week." (AR at 55.) Plaintiff also testified that she has "diabetic neuropathy in my feet," which causes feet "stay numb and tingly and they're achy." (*Id.*)

The VE's identification of the jobs of bottling line inspector, garment bagger, and folder assumed that Plaintiff can "sit, stand, and walk about six hours each in an eight-hour workday." (AR at 80.) However, the ALJ's decision does not evaluate the vocational impact of Plaintiff's knee impairment and diabetic neuropathy on her abilities to stand and walk six hours each per eight-hour workday. Therefore, the ALJ's findings regarding Plaintiff's RFC are insufficient to facilitate effective and meaningful review.

**Order**

For the foregoing reasons, this matter is REMANDED to the Commissioner for a new decision that

is consistent with this Opinion and for any further proceedings deemed necessary and appropriate by the

Commissioner.

July 8, 2019

**Lanny King, Magistrate Judge**
**United States District Court**